LEWIS & LLEWELLYN LLP
Rebecca Furman (Bar No. 294082)
bfurman@lewisllewellyn.com
Saad Rizwan (Bar No. 331828)
srizwan@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 800-0590

Attorneys for Third Party
C.C. GONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.C. GONG,<br><br>Movant,<br><br>v.<br><br>UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, and SONY MUSIC ENTERTAINMENT,<br><br>Plaintiffs. | Case No. [MISC. CASE NO.]<br><br>**NOTICE OF MOTION TO QUASH DEPOSITION SUBPOENA SERVED ON C.C. GONG OR, IN THE ALTERNATIVE TO MODIFY THE SUBPOENA TO LIMIT THE DEPOSITION'S DURATION AND SCOPE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Fed. R. Civ. P. 45(d)(3) |
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, and SONY MUSIC ENTERTAINMENT,<br><br>Plaintiffs,<br><br>v.<br><br>SUNO, INC., and JOHN DOES 1-10,<br><br>Defendants. | [Related to Case No. 1:24-cv-11611-FDS pending in the District of Massachusetts] |

**NOTICE OF MOTION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that non-party C.C. Gong ("Ms. Gong") in her individual capacity hereby moves this Court pursuant to Federal Rule of Civil Procedure 45(d)(3) for an order quashing or, in the alternative, modifying the subpoena ("Subpoena") issued by Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, and Sony Music Entertainment ("the UMG Plaintiffs") and served on Ms. Gong on November 4, 2026, which seeks Ms. Gong's testimony regarding a tweet that she made in February 2026.

The requested testimony would duplicate testimony available from Ms. Gong's former employer, Menlo Ventures Management, L.P. Preparing for and attending a separate deposition would impose substantial hardship on Ms. Gong in light of her existing work obligations and pre-planned travel.

Alternatively, Ms. Gong requests an order modifying the Subpoena to limit her deposition to one hour on the record and to questioning concerning her February 2026 social media post, including her reasons for posting and deleting it, the personal music-listening habits described in the post, and any nonprivileged communications concerning the post.

This motion is based upon the attached Memorandum of Points and Authorities; the supporting declarations of Saad Rizwan and C.C. Gong; the complete files and records in this action, and such oral argument and other documents as may be received by this Court at any hearing on this motion.

Dated: November 16, 2026

Respectfully Submitted,

LEWIS & LLEWELLYN LLP

By: */s/ Saad Rizwan*
Rebecca Furman
Saad Rizwan
Attorneys for Third Party
C.C. GONG

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37-1**

Pursuant to Local Rule 37-1, counsel for C.C. Gong hereby certifies that they have corresponded with counsel for Plaintiffs both by teleconference and in writing regarding the disputed issues, including meet-and-confer calls on November 6, 2026 and November 12, 2026, and that such attempts to resolve these issues were unsuccessful. *See* Declaration of Saad Rizwan ¶ 15.

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1
II. RELEVANT FACTS AND MEET-AND-CONFER HISTORY ........ 2
III. APPLICABLE LAW ........ 5
IV. ARGUMENT ........ 6
A. The Subpoena Imposes an Undue Burden on Ms. Gong and Should Be Quashed. ........ 6
1. There Is Little or Nothing to Be Gained from Deposing Ms. Gong, Rather Than a PMK. ........ 7
2. Any Slight Benefit Would Be Outweighed by the Burden to Ms. Gong. ........ 8
3. The Court Should Act to Protect Ms. Gong from Harassment-by-Subpoena. 11
B. Alternatively, Any Deposition Should be Limited to One Hour and to the Tweet. ... 11
V. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

## CASES

*Adams v. Albertson,*
2011 WL 4983980 (N.D. Cal. Oct. 19, 2011) .......... 11

*AF Holdings, LLC v. Does 1-1058*,
752 F.3d 990 (D.C. Cir. 2014) .......... 9

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
300 F.R.D. 406 (C.D. Cal. 2014) .......... 9

*Athalonz, LLC v. Under Armour, Inc.*,
2024 WL 3508496 (N.D. Cal. July 23, 2024) .......... 7

*Brewster v. City of Los Angeles,*
2024 WL 5466708; 2025 WL 2019968 (C.D. Cal. Dec. 23, 2024) .......... 9

*Dart Indus. Co. v. Westwood Chemical Co.*,
649 F.2d 646 (9th Cir. 1980) .......... 6, 8

*Equal Emp. Opportunity Comm'n v. Unicom Elec., Inc.,*
2007 WL 9359941 (C.D. Cal. Mar. 9, 2007) .......... 8

*Frank v. San Francisco Unified Sch. Dist.,*
2026 WL 2032980 (N.D. Cal. July 14, 2026) .......... 8

*Gonzales v. Google Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006) .......... 8

*In re Herz*,
2026 WL 18785 (N.D. Cal. Jan. 2, 2026) .......... 7

*Howard Univ. v. Borders*,
2021 WL 1614395 (E.D. Mich. 2021) .......... 6, 12

*Ilani v. Abraham,*
2018 WL 10467640 (D. Nev. Aug. 21, 2018) .......... 11

*KBS Holdco, LLC v. City of W. Hollywood,*
2025 WL 4649350 (C.D. Cal. July 8, 2025) .......... 6

*La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
285 F.R.D. 481 (N.D. Cal. 2012) .......... 11

*Mattel, Inc. v. Walking Mountain Prod.*,
353 F.3d 792 (9th Cir. 2003) .......... 11

*In re Perez by Allen*,
2020 WL 7056024 (N.D. Cal. Dec. 2, 2020) .......... 6

*St. Paul Mercury Ins. Co. v. Homes*,
2015 WL 7077450 (E.D. Cal. Nov. 13, 2015) .......... 8

*Taction Tech., Inc. v. Apple Inc.*,
2023 WL 4611826 (S.D. Cal. July 18, 2023) .......... 7

*Thompson v. Cnty. of Riverside*,
2023 WL 8168859 (C.D. Cal. July 26, 2023) .......... 6, 9

*Trunk v. City of San Diego*,
2007 WL 3001679 (S.D. Cal. Oct. 11, 2007) .......... 8

*U.S. E.E.O.C. v. Pinal Cnty.*,
714 F. Supp. 2d 1073 (S.D. Cal. 2010) .......... 8

*UMG Recordings, Inc. v. Suno, Inc.*,
Case No. 1:24-cv-11611—FDS (D. Mass.) .......... 1

**FEDERAL RULES**

Fed. R. Civ. P. 26 .......... 6
Fed. R. Civ. P. 26(b)(1) .......... 5
Fed. R. Civ. P. 26(b)(2)(C) .......... 5
Fed. R. Civ. P. 26(c) .......... 8
Fed. R. Civ. P. 26(c)(1)(B) .......... 6
Fed. R. Civ. P. 30(b)(1) .......... 4, 5
Fed. R. Civ. P. 30(b)(6) .......... 1, 2, 3, 4, 5, 7
Fed. R. Civ. P. 37 .......... ii
Fed. R. Civ. P. 45 .......... 2, 6
Fed. R. Civ. P. 45(d)(3) .......... i, 1, 6
Fed. R. Civ. P. 45(d)(3)(A)(iv) .......... 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

C.C. Gong moves to quash the deposition subpoena served on her by UMG Recordings, Inc., Capitol Records, LLC, and Sony Music Entertainment (collectively, "the UMG Plaintiffs") pursuant to Federal Rule of Civil Procedure 45(d)(3). That subpoena, which seeks testimony in the matter UMG Recordings, Inc. v. Suno, Inc., Case No. 1:24-cv-11611—FDS (D. Mass.) ("UMG v. Suno"), should be quashed to avoid imposing an undue burden on Ms. Gong.

Ms. Gong is a former employee of Menlo Ventures Management, L.P. ("Menlo"), one of Suno's investors. Ms. Gong's role on the Series C deal diligence for Suno was limited. While still an employee at Menlo, Ms. Gong posted a long-since deleted tweet about her use of Suno. The UMG Plaintiffs now demand testimony from Ms. Gong about her intentions in posting that tweet. Any light Ms. Gong might shed on that tweet would duplicate the testimony provided by Menlo's Person Most Knowledgeable ("PMK"), as the tweet is one of the topics that the UMG Plaintiffs noticed as a deposition topic for Menlo. The UMG Plaintiffs sought leave from the Massachusetts court to late-serve Ms. Gong after requesting that Menlo produce a witness on the topic of the tweet in question. Menlo has since agreed to educate the PMK on that topic, obviating any need to depose Ms. Gong.

Moreover, the UMG Plaintiffs demanded that Ms. Gong sit for a deposition during a time when she is away from San Francisco for previously booked travel (including attending a conference in Europe). Those facts, along with the availability of identical information from Menlo's PMK witness, demonstrate that the purpose of the deposition subpoena is solely harassment.

Alternatively, if the Court determines that any individual testimony from Ms. Gong is warranted, it should modify the subpoena to limit her deposition to one hour remotely on the record and confine questioning to her February 2026 tweet, including her reasons for posting and deleting it, the personal music listening habits described in the post, and any nonprivileged communications concerning the post. That limited examination would permit Plaintiffs to explore the personal matters encompassed by their Rule 30(b)(6) subpoena to Menlo while reducing the burden on Ms. Gong and avoiding an examination that duplicates Menlo's corporate testimony.

## II. RELEVANT FACTS AND MEET-AND-CONFER HISTORY

This miscellaneous action springs from UMG v. Suno, a case in which three record companies (the "UMG Plaintiffs") allege millions of instances of copyright infringement from the generative AI service created and distributed by Defendant Suno, Inc. ("Suno").

On October 27, 2025, the UMG Plaintiffs issued a nonparty Rule 45 subpoena for documents to Menlo, a venture capital firm that led or participated in the Series C and D financing rounds in Suno. Ms. Gong's role in conducting diligence and drafting Menlo's investment memorandum for the Series C investment was limited. (Gong Decl. ¶ 4.) Plaintiffs sought, inter alia, documents referenced in Menlo's investment memo, notes from Menlo's conversations with Suno, analyses pertaining to Suno and its competitors, training data, and market information. See, e.g., UMG Recordings, Inc. v. Menlo Ventures Management, L.P., N.D. Cal. Case No. 3:26--mc-80305 ("UMG v. Menlo"), Dkt. 1.

On August 20, 2026, the UMG Plaintiffs served a Rule 30(b)(6) subpoena on Menlo, seeking documents and testimony from a PMK on a host of topics allegedly pertaining to Menlo's relationship with Suno, and/or Menlo's knowledge of Suno's product and any alleged copyright violations. (See Declaration of Saad Rizwan, filed herewith ("Rizwan Decl."), ¶ 2 & Exh. A.) Topic 15, one of sixteen topics in the subpoena, demanded that Menlo designate a PMK to testify on the following subject:

> 15. The social-media post by C.C. Gong RELATING TO her shift in music listening from Spotify to SUNO, including: (i) her reasons for making the post; (ii) her reasons for deleting the post; (iii) her use of SUNO's AI SERVICE for music listening; and (iv) her use of Spotify or other music-streaming services before and after YOUR investment in SUNO.

(footnote omitted). On September 8, 2026, Menlo served its responses to UMG Plaintiffs' Rule 30(b)(6) subpoena, objecting to Topic 15 on the grounds, among others, that it sought irrelevant information concerning matters outside the scope of Ms. Gong's employment at Menlo and beyond Menlo's knowledge. On September 24, 2026, counsel for Menlo proposed revisions to Plaintiffs' Rule 30(b)(6) topics and stated that Menlo would not designate a witness on Topic 15 because Ms.

Gong made the social media post at issue[1] in her personal capacity, not as a representative of Menlo, the entity. (Rizwan Decl. ¶ 6 & Exh. C.) Subsequently, counsel for Menlo met and conferred with counsel for the UMG Plaintiffs about the scope of the 30(b)(6) demand. On September 30, 2026, as a compromise, counsel for Menlo offered to designate a Rule 30(b)(6) witness to testify on a narrowed version of Topic 15. (Rizwan Decl. ¶ 7 & Exh. D.)[2] On October 8, Plaintiffs countered with the below version of Topic 15 for Menlo's corporate witness to testify on:

> 15. **TOPIC 15:** Subject to and without waiving the objections contained in Menlo's September 8, 2026 responses and objections to the subpoena, Menlo will designate a witness reasonably prepared to testify regarding Menlo's knowledge, if any, of the posting and deletion of Ms. Gong's social media post, including Ms. Gong's reasons for posting and deleting the social media post and any communications concerning the social media post. Menlo will ~~not~~ designate a witness reasonably prepared to testify regarding Menlo's knowledge, if any, of Ms. Gong's personal music listening habits, including her personal use of Suno, Spotify, or other services, to the extent Menlo obtained such knowledge before, during, or after its investments in Suno.

(Rizwan Decl. ¶ 8 & Exh. E.) On October 12, 2026, after learning from Menlo's counsel that Ms. Gong was no longer employed at Menlo, counsel for the UMG Plaintiffs stated that they intended to serve her with a separate third-party subpoena. (Rizwan Decl. ¶ 9 & Exh. F.) Even after relaying their intent to subpoena Ms. Gong individually, Plaintiffs continued to demand that Menlo separately provide corporate testimony about the same tweet, proposing the following revised language for Topic 15 on October 15, 2026:

---

[1] Plaintiffs have focused on the snippet of Gong's since-deleted tweet that reads: "I've personally shifted most of my listening to Suno. I was so tired of Spotify giving me the same overplayed recommendations." Ms. Gong tweeted this on or about February 26, 2026.

[2] During the Topic 15 discussions preceding Plaintiffs' October 12 announcement that they intended to subpoena Ms. Gong individually, Plaintiffs' counsel never asked whether she would serve as Menlo's corporate representative, and Menlo's counsel never represented that she would. (Rizwan Decl. ¶ 9.)

> 15. **<u>TOPIC 15:</u>** Subject to and without waiving the objections contained in Menlo's September 8, 2026 responses and objections to the subpoena, Menlo will designate a witness reasonably prepared to testify regarding Menlo's knowledge, if any, of the posting and deletion of Ms. Gong's social media post~~, including Ms. Gong's reasons for posting and deleting the social media post and any communications concerning the social media post.~~. Menlo will not designate a witness ~~reasonably~~ prepared to testify regarding Menlo's knowledge, if any, of Ms. Gong's personal music listening habits, including her personal use of Suno, Spotify, or other services~~, to the extent Menlo obtained such knowledge before, during, or after its investments in Suno~~.

(Rizwan Decl. ¶ 10 & Exh. G.) In other words, Plaintiffs confirmed that they would seek both Menlo's Rule 30(b)(6) testimony on the tweet and Ms. Gong's individual testimony under Rule 30(b)(1). (Rizwan Decl. ¶ 11 & Exh. F.)

Prior to this firm representing Ms. Gong, the UMG Plaintiffs moved for leave to serve a deposition subpoena on Ms. Gong in the District of Massachusetts so that they could depose her "about her creation and subsequent deletion of a social-media post." (Rizwan Decl., Exh. H.) The Massachusetts court granted the motion,3 but required that Plaintiffs depose Ms. Gong within 30 days of the order, or November 25, 2026. (Rizwan Decl. ¶ 12.) Ms. Gong retained this firm to represent her on October 27, 2026 and was served with the subpoena on November 4, 2026. (Rizwan Decl. ¶¶ 13-14.) The UMG Plaintiffs unilaterally set November 13, 2026 as the date for the deposition—only 9 days after service. That subpoena (Rizwan Decl., Exh. I) is the subject of this motion.

Meanwhile, the parties' meet and confer efforts continued. Most recently, on November 6, 2026, Menlo offered to designate and educate a PMK on Topic 15 as the UMG Plaintiffs originally proposed it. (Rizwan Decl. ¶ 15 & Exh. J.) Hence, Menlo offered to produce a witness qualified to testify about Ms. Gong's reasons for posting the original tweet and her music listening habits, i.e., the very reason that the UMG Plaintiffs sought Ms. Gong's testimony in the first place. Despite that offer, the UMG Plaintiffs refused to withdraw Ms. Gong's subpoena, insisting that a corporate representative could not adequately address her reasons for the post and her personal use of Suno.

---

[3] The motion for leave to serve a subpoena on Ms. Gong was filed before this firm represented Ms. Gong and therefore Ms. Gong did not oppose that motion.

Yet Plaintiffs had originally optioned to include those subjects in Topic 15 of Menlo's Rule 30(b)(6) subpoena, and Menlo had neither represented that it would designate Ms. Gong nor been required to do so. (Rizwan Decl. ¶¶ 9, 15 & Exh. J.)

The parties engaged in further meet and confer efforts on November 12, 2026, and continued those efforts through correspondence that day and in the days that followed. On November 13, counsel for Ms. Gong and Menlo made a further proposal covering the full scope of Topic 15. Specifically, Menlo would produce a corporate representative to testify on all matters within Topic 15 other than Ms. Gong's personal reasons for posting and deleting the social media post and her personal music-listening habits. Ms. Gong, in turn, would testify in her individual capacity under Rule 30(b)(1) about those subjects—including her use of Suno, Spotify, or other services—and any non-privileged communications concerning the post. Together, the proposed testimony would address every subject Plaintiffs sought to explore under Topic 15. Counsel for Ms. Gong proposed limiting Ms. Gong's deposition to one hour, explaining that her individual testimony would supplement Menlo's corporate testimony on only a portion of Topic 15. Plaintiffs nevertheless declined the proposed one-hour limit, instead demanding four hours on the record to question Ms. Gong ostensibly on a single tweet.

Ms. Gong has not been employed by Menlo since September 30, 2026. (Gong Decl. ¶ 3.) A deposition of any length would pose a substantial hardship for her. (Id. ¶ 14.) Moreover, Ms. Gong has extensive work-related and personal travel commitments, including travel for her new employment, with trips to New York, Helsinki, and Los Angeles through November 27, 2026, and lengthy travel to Asia in December and early January. (Id. ¶¶ 11-13.) Ms. Gong anticipates that her travel schedule will be equally busy in 2027. (Id. ¶ 13.)

## III. APPLICABLE LAW

Courts deny a party discovery where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Federal Rule of Civil Procedure 45(d)(3) governs motions to quash or modify a subpoena. The Rule empowers this Court to quash or modify a subpoena when the subpoena "subjects a person to undue burden." *See, e.g.*, *Thompson v. Cnty. of Riverside*, No. 5:19-CV-00122-AB-SHK, 2023 WL 8168859, at *5 (C.D. Cal. July 26, 2023) (quashing subpoenas for procedural defects and for imposing undue burden); *Howard Univ. v. Borders*, No. 20-mc-51282, 2021 WL 1614395, at *2 (E.D. Mich. 2021) (limiting the duration and subject matter of a nonparty deposition). The "scope of discovery permitted by subpoena under Rule 45 is the same as that permitted under Rule 26," that is,

> a party may obtain discovery of any matter that is relevant to a claim or defense and that is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

*In re Perez by Allen*, No. 20-mc-80191-VKD, 2020 WL 7056024, at *2 (N.D. Cal. Dec. 2, 2020) (citing Rules 45 and 26(b)(1)). Further, Rule 26 authorizes the Court, for good cause, to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense" by specifying the terms of discovery, including its timing, and by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(B), (D).

The Ninth Circuit has recognized that discovery is more limited when directed at non-parties like Ms. Gong, to protect them "from harassment, inconvenience, or disclosure of confidential documents." *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649, 651 (9th Cir. 1980) (affirming lower court's order quashing a subpoena *duces tecum* and denying further discovery against nonparty); *see also KBS Holdco, LLC v. City of W. Hollywood*, No. 2:22-CV-05750-FLA (GJSX), 2025 WL 4649350, at *4 (C.D. Cal. July 8, 2025) (applying *Dart* to affirm Magistrate Judge's decision quashing subpoenas and issuing protective orders against nonparty depositions).

## IV. ARGUMENT

### A. The Subpoena Imposes an Undue Burden on Ms. Gong and Should Be Quashed.

The subpoena to Ms. Gong must be quashed because it seeks discovery prohibited by Fed. R. Civ. P. 26. It ***exclusively*** seeks testimony that is unreasonably cumulative or duplicative, and can be

obtained from another source that is more convenient, less burdensome, and less expensive. Moreover, the UMG Plaintiffs have had ample opportunity to obtain the information by discovery in their action against Suno.

**1. There Is Little or Nothing to Be Gained from Deposing Ms. Gong, Rather Than a PMK.**

First, the Court should quash the subpoena because it seeks only cumulative or duplicative information. To avoid imposing the burden of a deposition on Ms. Gong, Menlo's counsel has offered to educate and prepare a PMK witness on the topic of the sole tweet that forms the focus of the UMG Plaintiffs' subpoena. Ms. Gong would be involved in the preparation of that witness. (*See* Rizwan Decl. ¶ 15.) UMG Plaintiffs have not identified other witnesses pointing to Ms. Gong as relevant to the underlying matter or testifying that they took any actions based on her tweet. (*See* Rizwan Decl. ¶ 16.) The only reason that Ms. Gong was included as a document custodian was because of her tweet and at Plaintiffs' request—there is no indication that she possesses relevant information unavailable from Menlo. (*Id.*) She is simply not material to the UMG Plaintiffs' case.

Courts routinely deny depositions, and quash subpoenas, under parallel circumstances. In *Taction Tech., Inc. v. Apple Inc.*, No. 21-CV-00812-TWR-JLB, 2023 WL 4611826 (S.D. Cal. July 18, 2023), the court quashed deposition subpoenas to tech investors (referred to as the "Funders") where, as here, the Defendant demanded "testimony from the Funders that [Defendant] should and likely already has sought from Plaintiff." *Id.* at *6. Because Menlo has offered a PMK who would be knowledgeable about Ms. Gong's tweet and her music listening habits, any testimony UMG Plaintiffs could obtain from Ms. Gong, an individual nonparty, would be duplicative of testimony available from Menlo.

Courts in this District quash individual deposition subpoenas where the requested information was available through corporate discovery. For example, in *In re Herz*, 2026 WL 18785, at *4 (N.D. Cal. Jan. 2, 2026), the court quashed a former Apple employee's deposition subpoena because there was no showing that he possessed unique information unavailable from Apple and the requested information could be obtained "with much greater efficiency" through a Rule 30(b)(6) deposition or other corporate discovery. Similarly, in *Athalonz, LLC v. Under Armour, Inc.*, No. 23-

mc-80324, 2024 WL 3508496, at *3–4 (N.D. Cal. July 23, 2024), the court upheld the quashing of a nonparty subpoena where the requesting party failed to establish that the witness possessed relevant information unavailable from Under Armour and had not yet pursued available employee depositions. Menlo itself is a third party which is already being burdened with discovery and it has offered to provide the requested corporate testimony. Plaintiffs have not justified imposing the additional burden of a separate deposition on Ms. Gong.

Likewise, in a slew of cases involving the Equal Employment Opportunity Commission, courts in the Ninth Circuit have held that the availability of EEOC investigators' (non-privileged) files, and the identities of their interviewees, would obviate the need for any deposition testimony by the investigators themselves. *See Frank v. San Francisco Unified Sch. Dist*., No. 25-CV-03581-JCS, 2026 WL 2032980, at *6 (N.D. Cal. July 14, 2026); *Equal Emp. Opportunity Comm'n v. Unicom Elec., Inc*., No. CV026937CASJTLX, 2007 WL 9359941, at *2 (C.D. Cal. Mar. 9, 2007) (quashing subpoena to depose EEOC investigator where EEOC produced all non-privileged files from the investigation and identified the witnesses interviewed; plaintiff had "ample opportunity to obtain the information that it currently seeks through other forms of discovery"); *U.S. E.E.O.C. v. Pinal Cnty*., 714 F. Supp. 2d 1073, 1078 (S.D. Cal. 2010) (same result).

**2. Any Slight Benefit Would Be Outweighed by the Burden to Ms. Gong.**

Any conceivable benefit that the UMG Plaintiffs might derive from deposing Ms. Gong (rather than a properly-informed PMK) about a single tweet would be outweighed by the substantial burden on her time and potential disruption to her travel schedule.

Nonparties are entitled to broader protection from discovery under Rule 26(c), including an effort to weigh whatever "minimal benefit that would be derived" from a deposition against "the need to … protect against annoyance and undue burden." Trunk v. City of San Diego, No. 06CV1597-LAB(WMC), 2007 WL 3001679, at *5-*6 (S.D. Cal. Oct. 11, 2007), citing Dart Indus. Co. v. Westwood Chemical Co., 649 F.2d 646, 649 (9th Cir. 1980).

In evaluating undue burden, the court "weigh[s] the burden to the subpoenaed party against the value of the information to the serving party...." St. Paul Mercury Ins. Co. v. Homes, 2015 WL 7077450, at *2 (E.D. Cal. Nov. 13, 2015); see also Gonzales v. Google Inc., 234 F.R.D. 674, 680

(N.D. Cal. 2006) ("a court determining the propriety of a subpoena balances the relevance of the [testimony] sought, the requesting party's need, and the potential hardship to the party subject to the subpoena"). Further, when a subpoena seeks information that is not relevant, or otherwise not properly discoverable, "then the burden it imposes, however slight, is necessarily undue: why require a party to produce information the requesting party has no right to obtain?" AF Holdings, LLC v. Does 1-1058, 752 F.3d 990, 995 (D.C. Cir. 2014).

Disruptions to Ms. Gong's ability to work, and the travel demands of her career, are factors the Court can and should consider in its analysis. See, e.g., Thompson v. Cnty. of Riverside, No. 5:19-CV-00122-AB-SHK, 2023 WL 8168859, at *9 (C.D. Cal. July 26, 2023) (factoring in witness's inability to "leave her home for a period of time due to a medical issue"); Brewster v. City of Los Angeles, No. 5:14-CV-02257-JGB-SPX, 2024 WL 5466708, at *4 (C.D. Cal. Dec. 23, 2024), review denied, No. EDCV 14-2257 JGB (SPX), 2025 WL 2019968 (C.D. Cal. June 27, 2025) (granting motion to quash and awarding sanctions; factoring in the "burdens associated with complying with a subpoena, such as the time spent at and preparing for the deposition … and possible travel-related expenses.").

The analysis by Magistrate Judge Segal in the Central District is directly on point here:

> In contrast to the relatively low value of [the witness's] testimony, the burden on [the witness] is substantial. Preparing and sitting for a deposition is always a burden, even when documents are not requested, particularly for a non-party. Additionally, because the deposition would have to proceed immediately to be completed before the discovery cut-off, the burden would be substantially greater. This is particularly true for [the witness], as she may not even be in the country at present. … The record does not disclose [the witness's] current location. Therefore, the Court cannot assume that [the witness] is even in the District. [The subpoenaing party has] not shown that [the witness's] testimony is essential, and the burden on [the witness] in complying with the subpoena would be great. Accordingly, the balance of interests weighs strongly in favor of [the witness].

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 412–13 (C.D. Cal. 2014).

The Court does not need to speculate as to the burden that Ms. Gong would face if required to sit for a deposition. Fact discovery closed on September 30, 2026. (*UMG v. Suno*, Dkt. 284.) The deadline to serve third-party subpoenas in the underlying action was on October 2, 2026. (*Id.*) The

current deadline to depose third parties other than Ms. Gong is November 20, 2026. However, that date relates to third party deposition notices that were timely noticed and was extended to accommodate third party requests for deposition dates that fell outside the deposition cutoff deadline. (*UMG v. Suno*, Dkts. 290 and 291.)

The UMG Plaintiffs sought leave from the court in *UMG v. Suno* because, as they say, they were diligent in seeking deposition testimony and Ms. Gong's departure from Menlo was late-disclosed. *UMG v. Suno*, Dkt. 293. But the UMG Plaintiffs' position ignores that Ms. Gong's tweet was made on or about February 26, 2026. The UMG Plaintiffs had seven months before discovery closed to serve Ms. Gong with a deposition subpoena, but waited until *after* the close of fact discovery to seek leave to take Ms. Gong's deposition. Neither the timing nor the fact of Ms. Gong's departure excuses Plaintiffs' delay. If UMG Plaintiffs believed that only Ms. Gong could adequately testify about the tweet, they could have subpoenaed her at any point between February 26 and October 2, 2026. They could not reasonably rely on obtaining her testimony through Menlo's corporate deposition because Menlo had never represented that it would designate her on Topic 15 prior to October 2. Plaintiffs therefore had no basis to wait until after the October 2, 2026 deadline to pursue her individual testimony.

As a result of their delay, Ms. Gong is unavailable for her deposition due to pre-planned work and personal Thanksgiving travel through November 27, 2026, i.e., after the date that the UMG Plaintiffs have been ordered by the Massachusetts court to complete Ms. Gong's deposition. (Gong Decl. ¶¶ 11-13.) Ms. Gong has no plans to be in San Francisco during the relevant time period and is otherwise unavailable to prepare for or sit for a deposition. (Id.)

Already, the Massachusetts court has accommodated the UMG Plaintiffs' delay by allowing them 30 days, past the close of discovery, to depose Ms. Gong. The burden and inconvenience of that delay should not be borne by Ms. Gong, especially when the UMG Plaintiffs waited seven months to pursue her deposition and have an alternative avenue to obtain the deposition testimony in the form of the 30(b)(6) deposition of Menlo.

### 3. The Court Should Act to Protect Ms. Gong from Harassment-by-Subpoena.

The UMG Plaintiffs' refusal to withdraw the subpoena, even after Menlo offered to educate a PMK regarding the listening habits of its ex-employee, Ms. Gong, reveals that the real purpose of the subpoena is harassment for the sake of potential litigation advantage.

UMG Plaintiffs' refusal to accept Menlo's offer to provide the full scope of Topic 15 testimony further supports the inference that the subpoena is intended to harass Ms. Gong rather than obtain information. Menlo offered to educate its corporate representative on the matters within Ms. Gong's personal knowledge, avoiding the burden of requiring her to prepare for and sit for a separate deposition. *See La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012) (explaining that a corporate designee need not possess personal knowledge and may obtain information from "documents, past employees, or other sources"). Nor could Plaintiffs dictate who would provide Menlo's corporate testimony. *See Ilani v. Abraham*, No. 2:17-cv-00692-APG-PAL, 2018 WL 10467640 (D. Nev. Aug. 21, 2018) (explaining that the noticing party "may not demand that a specific person appear as the corporation's designated witness"). Plaintiffs' insistence on deposing Ms. Gong herself, despite Menlo's offer to provide the requested testimony, supports the inference that the subpoena is being pursued to harass one of Suno's investors.

The Court should not countenance that tactic but rather act to protect Ms. Gong from it. *Cf. Adams v. Albertson*, No. C 10-04787 WHA, 2011 WL 4983980 (N.D. Cal. Oct. 19, 2011) (quashing four subpoenas intended to harass City Council members who all attended the same closed session; granting leave to re-serve only a single person, to avoid undue harassment); *Mattel, Inc. v. Walking Mountain Prod.*, 353 F.3d 792, 814 (9th Cir. 2003) (affirming district court's decision to quash a subpoena and award attorney's fees to a non-party; subpoena was abusively drawn and "served for the purpose of annoying and harassment and not really for the purpose of getting information.").

## B. Alternatively, Any Deposition Should be Limited to One Hour and to the Tweet.

If the Court declines to quash the subpoena in its entirety, it should exercise its authority under Rules 45(d)(3)(A)(iv) and 26(c)(1) to limit Ms. Gong's deposition to a remote deposition for one hour on the record and confine questioning to her February 2026 tweet, including her reasons

for posting and deleting it, the personal music-listening habits described in the post, and any nonprivileged communications concerning the post. Any individual examination should supplement—not duplicate—Menlo's corporate testimony and should not extend to unrelated matters.

The availability of Menlo's corporate testimony substantially narrows any need to examine Ms. Gong individually. Menlo offered to educate its corporate representative on the full scope of Topic 15. After Plaintiffs dismissed that offer outright, counsel for Menlo and Ms. Gong then proposed a further accommodation under which Menlo would provide corporate testimony on all matters within that topic other than Ms. Gong's personal reasons for posting and deleting the post and her personal music listening habits. Ms. Gong would testify individually about those personal subjects and any nonprivileged communications concerning the post. (Rizwan Decl. ¶ 15 & Exh. J.) Together, the proposed testimony would address every subject encompassed by Topic 15. Plaintiffs therefore have no basis to expand Ms. Gong's individual deposition beyond her personal testimony concerning the post and her listening habits.

Moreover, a one-hour limit is proportionate to that discrete inquiry. Ms. Gong's individual testimony would supplement only a portion of one of the sixteen topics in Plaintiffs' subpoena to Menlo. It is hard to imagine that Plaintiffs would have devoted four hours to Ms. Gong's tweet had she testified as Menlo's corporate representative. Yet Plaintiffs now insist they need four hours to explore a single tweet. (Rizwan Decl. ¶ 15 & Exh. J.) The likely explanation for Plaintiffs' four-hour demand is that they intend to use Ms. Gong's deposition to explore not just her tweet and personal listening habits, but also subjects assigned to Menlo's corporate representative and even matters unrelated to the tweet altogether. That prospect reinforces the need to protect Ms. Gong from a burdensome examination untethered to the narrow justification Plaintiffs offered for deposing her in their motion for leave. (Exh. H, at 1.) A one-hour limit, coupled with an express subject-matter restriction, would permit Plaintiffs to obtain the personal testimony they seek from Ms. Gong without turning her deposition into a vehicle for duplicative discovery or harassment. See Howard Univ., 2021 WL 1614395, at *2 (modifying deposition subpoena to confine nonparty's examination to two specified phone calls and limit its duration to two hours).

## V. CONCLUSION

The UMG Plaintiffs got everything they wanted from Menlo: Menlo agreed to produce a PMK witness capable of testifying about Ms. Gong's reasons for posting her original tweet and her music listening habits. Having achieved their goal, their subpoena to Ms. Gong serves no purpose other than harassment. The Court should spare Ms. Gong the hardship of sitting for a deposition—especially amid her work obligations at her new job as well as her previously booked work-related and holiday travel—and quash the subpoena.

Alternatively, if the Court declines to quash the subpoena, Ms. Gong requests an order modifying it to limit her deposition to one hour on the record and to limit questioning to her February 2026 tweet.

Dated: November 16, 2026

Respectfully Submitted,

LEWIS & LLEWELLYN LLP

By: */s/ Saad Rizwan*
Rebecca Furman
Saad Rizwan
Attorneys for Third Party
C.C. GONG